# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | NO. 3:11-CR-0195 |
| v. | (JUDGE CAPUTO) |
| PETER SEPLING. | |

## MEMORANDUM

Presently before me is the Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Doc. 161) filed by Petitioner Peter Sepling ("Petitioner"). Petitioner pled guilty in this Court to Count I of the Indictment charging Petitioner with aiding and abetting the importation of in excess of one (1) kilogram of gamma butyrolactone ("GBL") from China to the United States in violation of 21 U.S.C. § 952. After Petitioner's guilty plea was accepted but before sentencing, Petitioner was arrested and charged in a one-count criminal complaint with conspiring to import methylone into the United States in violation of 21 U.S.C. § 963. Pursuant to the agreement of the parties, the criminal conduct relating to the importation of methylone was incorporated into the GBL case for purposes of relevant conduct. In exchange for Petitioner's agreement to accept responsibility for his conduct involving the importation of methylone, the United States agreed to withdraw the one-count criminal complaint. The United States Probation Office thereafter prepared a Presentence Investigation Report ("PSR") indicating a guidelines sentencing range of 188-235 months in prison. Petitioner was sentenced to a prison term of 102 months.

Now, Petitioner contends that his sentencing counsel was constitutionally ineffective for the following reasons: (1) failing to investigate methylone; (2) failing to participate in negotiations concerning drug quantity, relevant conduct, and marijuana-to-methylone drug equivalency ratio; (3) failing to argue that Petitioner was a minor participant in the offense conduct; and (4) failing to correctly advise Petitioner on the merits of a direct appeal. Because he fails to satisfy the standard for evaluating ineffective assistance of counsel claims set forth by the Supreme Court in *Strickland*

*v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), Petitioner's § 2255 motion will be denied.

## I. Background

Petitioner was charged in Counts 1-5 of a six-count Indictment that was returned by a Federal Grand Jury on June 7, 2011. (*See* PSR, ¶ 1). Those charges were brought following an investigation into the importation of GBL and the trafficking of anabolic steroids in or around Luzerne County, Pennsylvania. (*See id*. at ¶ 6). More particularly, Petitioner ordered GBL through the internet and paid another individual to accept the parcels, and then Petitioner would sell the GBL for $30.00 per ounce. (*See id*. at ¶¶ 13, 15). In total, Petitioner was involved in the distribution and possession with intent to distribute 1.1 kilograms of GBL. (*See id*. at ¶ 16).

On October 28, 2013, Petitioner appeared in this Court with his counsel, Joseph P. Nahas ("Nahas" or "sentencing counsel"), and, as part of a written plea agreement, Petitioner pled guilty to Count 1 of the Indictment. (*See id*. at ¶ 2; *see also* Doc. 123, "Plea Agreement," ¶ 1 ). The plea agreement also provided, *inter alia*, that: (1) pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the sentencing guidelines would be calculated without reference to the career offender guideline; (2) the United States would recommend a three-level reduction in offense level if Petitioner adequately demonstrated acceptance of responsibility; (3) Petitioner would fully cooperate with the United States; and (4) the United States would move for dismissal of the remaining counts after sentencing. (*See* Plea Agreement, ¶¶ 1, 9, 11A, 13). The guilty plea was accepted and a presentence investigation was ordered. (*See* PSR, ¶ 2).

Following Petitioner's plea, Homeland Security agents began an investigation into a methylone smuggling and distribution organization in the Wilkes-Barre area. (*See id*. at ¶ 13). As part of that investigation, Homeland Security agents identified Petitioner as a participant in the importation of five (5) or six (6) packages containing a total of approximately ten (10) kilograms of methylone from July 2013 to January 2014. (*See id*. at ¶ 27). Petitioner would utilize email to arrange for the shipments to be made from China. (*See id*.). During a recorded conversation, Petitioner discussed the seizure of a prior shipment, the need to be careful with law enforcement, the possibility of ordering a new package containing 300 grams of methylone, and changing the method

2

in which the methylone was concealed in shipments. (*See id*. at ¶ 28). Petitioner was arrested shortly after the recorded conversation at his residence, where agents found approximately 125 grams of methylone. (*See id*.). Petitioner was charged in a one-count criminal complaint with conspiring to import methylone into the United States in violation of 21 U.S.C. § 963. (*See id*. at ¶ 3).

After Petitioner was arrested on the methylone charge, Ingrid Cronin ("Cronin") was assigned to represent Petitioner on that charge. (*See* Doc. 161-1, "Sepling Decl.", ¶ 1). According to Petitioner, during his discussions with Cronin, he was led to believe that the quantity of methylone at issue that was going to be made part of the GBL case as relevant conduct was (3) kilograms and not ten (10) kilograms. (*See id*.). Based on these conversations, Petitioner was under the impression that he would be "saving the prosecution time and resources thus justifying a lower sentencing exposure." (*Id*. at ¶ 2). Petitioner thus believed that his prison exposure was 60 to 80 months. (*See id*. at ¶ 3). Cronin during that conversation never indicated to Petitioner that he would not receive the acceptance of responsibility reduction on his sentence. (*See id*. at ¶ 4). Petitioner further declares that once he agreed to the transfer of the relevant conduct to the GBL case, he never received a copy of the PSR, he had no knowledge that the PSR's calculations were derived from a ten (10) kilogram quantity of methylone at a marijuana-to-methylone ratio of 500:1, and/or that the PSR did not include reductions for acceptance of responsibility or as a minor participant. (*See id*. at ¶ 5). Had he been furnished with a copy of the PSR, Petitioner represents that he would have objected to the calculation of the base offense level. (*See id*. at ¶ 6). Lastly, Petitioner maintains that his decision to forego a direct appeal was founded on Nahas' representation that Petitioner had no viable claim on appeal since he received a below guidelines range sentence. (*See id*. at ¶ 7).

The United States Probation Office prepared a PSR prior to sentencing. (*See* PSR, *generally*). The PSR calculated Petitioner's base offense level as 34. (*See id*. at ¶ 34). The PSR did not subtract a three-level reduction for acceptance of responsibility in light of Petitioner's participation in the importation of methylone from China. (*See id*. at ¶ 31). The PSR further recognized that, based on the terms of the plea agreement, Petitioner's sentencing guidelines were calculated without reference to the career offender provisions, resulting in a total offense level of 34 and a criminal history category of V. (*See id*. at ¶ 81). The PSR further noted that a two-level downward variance may be

applicable pursuant to 18 U.S.C. § 3553(a) to account for an anticipated amendment to the sentencing guidelines. (*See id*. at ¶ 95). Accordingly, with the two-level downward variance, the guidelines range for Petitioner was between 188 and 235 months. No objections were raised to the PSR. (*See* Doc. 156, "Sentencing Tr.," 5:9-20).

Petitioner appeared for sentencing on May 27, 2014. (*See id*., *generally*). At sentencing, Nahas asserted that the PSR incorrectly calculated the base offense level at 34 based on ten (10) kilograms of methylone when Petitioner was only caught with three (3) kilograms. (*See id*. at 5:22-6:1). Nahas thus contended that Petitioner's base offense level should have been 32 as opposed to 34. (*See id*. at 6:11-25). And, applying the two-level variance based on the anticipated amendments to the sentencing guidelines, Nahas argued that the appropriate offense level was 30 with a criminal history category of V. (*See id*.). Nahas then requested a further reduction of the base level to 28 because Petitioner was only a minimal participant in the importation of the methylone. (*See id*. at 7:8-22). Ultimately, Petitioner's sentencing counsel advocated for a prison sentence of between five (5) and seven (7) years. (*See id*. at 12:3-9).

Petitioner spoke on his own behalf at sentencing. (*See id*. at 12:25-18:21). Petitioner described methylone as "like ecstasy. If ecstasy is a ten of high feeling when you get high and dance around and it feels good, getting rubbed by your girlfriend, that lasts six hours. It's a ten. This stuff [methylone] is six and lasts about an hour and a half." (*Id*. at 14:19-23).[1] Petitioner further explained that he believed his agreement regarding the methylone was for three (3) kilograms, and, as a result, Petitioner believed his sentencing exposure was 63 months, and that he'd be happy with 84 months. (*See id*. at 15:7-12, 16:13). Petitioner further argued that he thought he would receive a two-level reduction from his base offense as a "minimal participant." (*See id*. at 16:6-7, 16:17). With regards to the importation of the methylone, Petitioner explained that he found the company that sold methylone and he ordered it. (*See id*. at 19:7). Another individual provided Petitioner the address to have the methylone shipped to, and that individual sent the money, picked up the packages, and

---

[1] The Assistant United States Attorney at sentencing agreed with Petitioner's characterization of methylone as a "club drug like ecstasy." (*Id*. at 23:23).

4

broke down the drug. (*See id*. at 19:9-11). Petitioner stated that he ordered methylone ten (10) times, and he got a "decent amount" of money for his involvement. (*See id*. at 19:13-23). While Petitioner used the drug and partied with it, he never distributed methylone; however, Petitioner was aware that the other individual was distributing the drug. (*See id*. at 19:24-20:2).

At the conclusion of Petitioner's sentencing argument and the United States' response thereto, I noted that I agreed with the guideline calculation, but thought that it "seems more severe than it ought to be." (*Id*. at 25:12-21). In considering the factors set forth in 18 U.S.C. § 3553(a), I "accept[ed] the fact that [methylone is] somewhat less of an impact than ecstasy." (*Id*. at 26:6-7). As such, in view of the § 3553(a) factors and "recognizing that . . . the sentencing guidelines are a little more severe than they ought to be in the circumstances," Petitioner was sentenced to 102 months in prison. (*Id*. at 27:19-23).

Now, pursuant to 28 U.S.C. § 2255, Petitioner contends that the representation provided by sentencing counsel was constitutionally deficient. (*See* Docs. 161-162, *generally*). The United States has filed its opposition to Petitioner's § 2255 motion, (*see* Doc. 169, *generally*), and Petitioner has filed a reply thereto. (*See* Doc. 173, *generally*).

## II. Legal Standards

**A.     28 U.S.C. § 2255.**

"Motions pursuant to 28 U.S.C. § 2255 are the presumptive means by which federal prisoners can challenge their convictions or sentences that are allegedly in violation of the Constitution." *Okereke v. United States*, 307 F.3d 117, 120 (3d Cir. 2002). Section 2255 permits a prisoner sentenced by a federal court to move the court that imposed the sentence to "vacate, set aside, or correct the sentence" where: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a).

Section 2255(b) generally entitles a petitioner to a hearing on his motion, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. . . ." 28 U.S.C. § 2255(b); *see also* Rule 4(b), Rules Governing Section 2255 Proceedings for the United

States District Courts ("If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party."). The threshold the petitioner must meet to obtain an evidentiary hearing is considered to be "reasonably low." *United States v. Booth*, 432 F.3d 542, 546 (3d Cir. 2005). In considering a § 2255 motion, the "district court must 'accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record.'" *Johnson v. United States*, 294 F. App'x 709, 710 (3d Cir. 2008) (quoting *Booth*, 432 F.3d at 545-46). The district court may, however, dispose of "vague and conclusory allegations" contained in a § 2255 petition without further investigation. *Id*. at 710 (quoting *United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000)).

**B.     Ineffective Assistance of Counsel.**

Among other protections, the Sixth Amendment to the United States Constitution guarantees an accused in a criminal prosecution "to have the assistance of counsel for his defense." U.S. Const. amend. VI. The applicable federal precedent for ineffective assistance claims is the well-settled two-prong test established by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

To establish he was denied the effective assistance of counsel under *Strickland*, the movant must show that (1) the performance of trial counsel fell below an objective standard of reasonableness, and (2) the performance of counsel unfairly prejudiced the defense. *Id.* at 687-88, 691, 104 S. Ct. 2052. "Both *Strickland* prongs must be satisfied." *George v. Sively*, 254 F.3d 438, 443 (3d Cir. 2001) (citing *United States v. Nino*, 878 F.2d 101, 104 (3d Cir. 1989)).

The first *Strickland* prong requires a defendant to "establish . . . that counsel's performance was deficient." *Jermyn v. Horn*, 266 F.3d 257, 282 (3d Cir. 2001). Proving a deficiency in conduct "'requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed defendant by the Sixth Amendment.'" *Id*. (quoting *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052). "In assessing counsel's performance, 'every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" *Id*. (quoting *Strickland*, 466 U.S.

6

at 689, 104 S. Ct. 2052).

"Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is to say, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689, 104 S. Ct. 2052. The benchmark for judging any claim of ineffectiveness of counsel is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id*.

The second prong of *Strickland* requires a defendant to show that counsel's performance unfairly prejudiced the defendant, meaning that counsel's errors were so serious as to deprive the defendant of a trial whose result is reliable. *Id*. at 687, 104 S. Ct. 2052. It is not enough to show that the error had some conceivable effect on the outcome of the proceeding, for virtually every act or omission would meet such a test. *Id*. at 693, 104 S. Ct. 2052. Rather, the defendant must show there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Id*. at 694, 104 S. Ct. 2052. A reasonable probability is sufficient to undermine confidence in the outcome of the trial. *Id*. The Third Circuit has stated that the "*Strickland* prejudice standard is not 'stringent'- it is, in fact, 'less demanding than the preponderance standard.'" *Williams v. Beard*, 637 F.3d 195, 227 (3d Cir. 2011) (quoting *Jermyn*, 266 F.3d at 282).

### III. Discussion

Petitioner argues that sentencing counsel was constitutionally ineffective for four reasons: (1) failing to investigate methylone, the drug that was the driving force behind Petitioner's guidelines range; (2) failing to participate in negotiations concerning drug quantity, relevant conduct, and marijuana-to-methylone ratio; (3) failing to argue that Petitioner was a minor participant in the offense conduct; and (4) failing to correctly advise Petitioner on the merits of a direct appeal. (*See* Doc. 162, *generally*). I will address these arguments in turn, but first note that the instant motion is properly resolved without a hearing. Section 2255(b), as stated, requires an evidentiary hearing for all motions brought pursuant to the statute "unless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *Booth*, 432 F.3d at

7

545; *United States v. Day*, 969 F.2d 39, 41-42 (3d Cir. 1992). "Where the record, supplemented by the trial judge's personal knowledge, conclusively negates the factual predicates asserted by the petitioner or indicate[s] that petitioner is not entitled to relief as a matter of law, no hearing is required." *Judge v. United States*, 119 F. Supp. 3d 270, 280 (D.N.J. 2015); *see also United States v. Tuyen Quang Pham*, 587 F. App'x 6, 8 (3d Cir. 2014); *Government of Virgin Islands v. Nicholas*, 759 F.2d 1073, 1075 (3d Cir. 1985); *Booth*, 432 F.3d at 546.

Based on the record of this matter, and for the reasons set forth below, Petitioner's ineffective assistance claims are without merit, and no hearing is therefore required for the resolution of the instant § 2255 motion.

A.  **Failure to Investigate Methylone.**

Petitioner first contends that his counsel was deficient for failing to investigate the drug methylone despite counsel's acknowledgment that he "knew nothing about the drug." (*See* Doc. 16, 7). Petitioner therefore maintains that counsel was ineffective because he was not prepared to challenge the PSR's application of a 500:1 drug equivalency ratio, which, Petitioner contends, overstated the seriousness of methylone. (*See id*. at 7-10). As a result, Petitioner asserts that, having no objection to the PSR, the court adopted a 500:1 marijuana-to-methylone drug equivalency ratio based on the finding that methylone is most analogous to 3,4-methylenedioxymethamphetamine ("MDMA" or "ecstasy"), which also converts at a ratio of 500:1. (*See id*. at 6; *see also* Sententcing Tr., *generally*; PSR, ¶ 34). In his reply, Petitioner highlights that the Probation Office's recommendation to apply a 500:1 ratio in this case should have been objected to by sentencing counsel given several decisions from courts in the Second Circuit applying a 200:1 marijuana-to-MDMA conversion ratio. (*See* Doc. 173, 5-12).

Petitioner is not entitled to relief under *Strickland*. Although Petitioner cites cases applying a 200:1 drug equivalency ratio for MDMA, other courts have continued to apply a 500:1 marijuana-to-MDMA ratio. *See*, *e.g.*, *United States v. Silouangkhoth*, 550 F. App'x 643, 645 (10th Cir. 2013) (affirming district court's use of 500:1 ratio for MDMA); *United States v. Thannavong*, 533 F. App'x 589, 593 (6th Cir. 2013); *United States v. Ferguson*, 447 F. App'x 898, at 903 (10th Cir. 2012). Moreover, the Fifth Circuit recently affirmed a district court's use of a 500:1 drug equivalency ratio

8

for methylone. *See United States v. McClure*, - - - F. App'x - - -, 2017 WL 3207141, at *1 (5th Cir. July 27, 2017) ("Because methylone is not specifically referenced in U.S.S.G. § 2D1.1(c), in calculating the guidelines range, the district court determined that MDMA was the most closely related controlled substance and therefore applied MDMA's 500:1 drug equivalency ratio."); *see also United States v. Breton*, 672 F. App'x 108, 110 (2d Cir. 2016) (affirming district court's use of methylone-to-marijuana equivalency of 500:1). Use of this ratio was thus appropriate, especially given the characterization of methylone as comparable to MDMA. (*See* Sentencing Tr., 10:25-11:1, 14:19-23, 23:23).

Moreover, in addressing the § 3553(a) factors at sentencing, I accepted as true that methylone has less of an impact than MDMA. (*See id*. at 26:6-7). This was consistent with the argument provided by Petitioner's sentencing counsel, as well similar statements by Petitioner, that methylone is like a "watered down ecstasy" and "not to the degree of the ecstasy drug." (*Id*. at 10:25-11:1, 14:19-23). The sentence of imprisonment imposed on Petitioner reflects that, as the 102 month sentence amounted to a significant downward variance from the recommended guidelines range of 188-235 months. (*See id*. at 25:12-28:9).

Here, Petitioner is unable to satisfy either prong of *Strickland*. First, Petitioner is unable to demonstrate that his counsel's performance fell below an objective standard of reasonableness. Although sentencing counsel acknowledged that he knew little about methylone, he appropriately likened the drug to a "watered down ecstasy." In fact, counsel's characterization of the drug was consistent with Petitioner's statements at sentencing. Thus, Petitioner cannot demonstrate any performance deficiencies by his counsel with respect to the PSR's recommendation that methylone is most closely related to ecstasy. Likewise, Petitioner fails to demonstrate that counsel's performance was deficient based on his failure to advocate for a "200-to-1 ratio [which] was widely adopted in the majority of MDMA cases," (Doc. 173, 13), because, despite Petitioner's claim to the contrary, courts continue to apply a 500:1 marijuana-to-MDMA ratio and a 500:1 drug equivalency ratio in methylone cases. As such, because there was no error in calculating Petitioner's guidelines range, Petitioner is unable to demonstrate that sentencing counsel's conduct was objectively unreasonable regarding the drug equivalency ratio applied in this case.

Second, even if Petitioner established that his sentencing counsel was deficient in failing to advocate for a 200:1 marijuana-to-methylone ratio, Petitioner has not demonstrated that he was prejudiced as a result. In sentencing Petitioner, I accepted that methylone was somewhat less of an impact than ecstasy, and, more significantly, found that the guidelines were more severe than they ought to be and did not "suit me in terms of fairness." (Sentencing Tr., 25:12-21, 26: 6-7). Based on these considerations, Petitioner was sentenced to a 102 month term of imprisonment, a substantial downward variance from the recommended guideline range. In these circumstances, Petitioner has failed to demonstrate a reasonable probability that counsel's purported deficient performance affected his sentence. *See United States v. Hopkins*, 568 F. App'x 143, 148 (3d Cir. 2014) (citing *United States v. Hankerson*, 496 F. 3d 303, 310 (3d Cir. 2007)).

**B.  Failure to Participate in Negotiations Concerning Drug Quantity, Relevant Conduct, and Marijuana-to-Methylone Ratio.**

Petitioner next asserts that his sentencing counsel was constitutionally ineffective for failing to participate in negotiations with Cronin concerning drug quantity, relevant conduct, and marijuana-to-methylone ratio after he was arrested on the methylone charge. (*See* Doc. 162, 2, 10-15). According to Petitioner, sentencing counsel was not present during negotiations for a "verbal plea agreement" that provided for rolling the methylone charge into the GBL case as relevant conduct and for a sentence based on a three (3) kilogram quantity of methylone. (*See id*. at 11). Rather, Cronin was present for those discussions, and she indicated that Petitioner "would be looking at a sentence in the area of 60-80 months." (*Id*.; *see also* Sepling Decl., ¶ 3). Petitioner further argues that he was unable to discuss these negotiations or the content of the PSR with sentencing counsel until five (5) minutes before sentencing. (*See* Doc. 162, 11). As a result, Petitioner contends that Nahas was unprepared for sentencing, which Petitioner maintains is evident based on counsel's failure to argue for a sentencing reduction based on acceptance of responsibility, his failure to discuss the methylone quantity, and his failure to contest the marijuana-to-methylone conversion ratio. (*See id*. at 11-13).

Petitioner is not entitled to relief on the second issue raised in the instant § 2255 motion. First, counsel's performance regarding his conduct with respect to the marijuana-to-methylone conversion ratio was not deficient for reasons previously articulated. Moreover, Petitioner's

10

sentencing counsel was not deficient regarding the quantity of methylone at issue, as he emphasized at sentencing that Petitioner's sentence should be calculated using an amount of three (3) kilograms of methylone. (*See* Sentencing Tr., 5:22-6:25, 11:23-12:9). Further, counsel did not act unreasonably in failing to argue that Petitioner should receive a reduction for acceptance of responsibility given that Petitioner, following his guilty plea to the importation of GBL, conspired to import methylone from China, which, pursuant to the agreement of the parties, was conduct for which Petitioner was being sentenced. (*See* PSR, *generally*; Sentencing Tr., *generally*). Simply put, it would have made no sense for sentencing counsel to argue for Petitioner to receive a reduction based on acceptance of responsibility when his sentence was being driven by his post-plea/relevant conduct pertaining to the importation of methylone. Petitioner fails to rebut the presumption that Nahas' decision to argue for reductions based on quantity and participation as opposed to acceptance of responsibility was part of a sound strategy. *See*, *e.g.*, *United States v. Baxter*, 684 F. App'x 133, 136-37 (3d Cir. 2017).

Second, even if Petitioner's sentencing counsel's performance was inadequate on any of these issues, Petitioner was not prejudiced. Here, Petitioner pled guilty, and, in connection with his plea, he signed a "Statement of Defendant." (*See* Plea Agreement, *generally*; Doc. 124, "Statement of Defendant", *generally*). In both of those documents, Petitioner acknowledged that he faced a maximum sentence of twenty (20) years in prison. (*See* Plea Agreement, ¶ 1; Statement of Defendant, ¶ 2). Petitioner does not dispute that a plea colloquy was held on his guilty plea, nor does Petitioner contest the adequacy of that colloquy. (*See* Doc. 162, *generally*; 173, *generally*). Thus, Petitioner cannot demonstrate that he was prejudiced by the allegedly erroneous prediction of his sentencing exposure, as the Third Circuit has held that "an erroneous sentencing prediction by counsel is not ineffective assistance of counsel where, as here, an adequate plea hearing was conducted." *United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007) (citing *United States v. Jones*, 336 F.3d 245, 254 (3d Cir. 2003); *United States v. Mustafa*, 238 F.3d 485, 492 (3d Cir. 2001); *Masciola v. United States*, 469 F.2d 1057, 1059 (3d Cir. 1972) (per curiam)). Likewise, as there was no basis for Nahas to argue for a reduction for Petitioner's acceptance of responsibility, Petitioner was not prejudiced by that conduct. *See*, *e.g.*, *Martin v. United States*, No. 14-666, 2017 WL 1496961, at *6 (N.D. Ala. Feb. 28, 2017). Furthermore, Petitioner has not demonstrated any prejudice as a result of his sentencing

counsel not participating in the negotiations with the United States after he was arrested for importing methylone where Petitioner was represented by other counsel during those discussions.

**C.      Failure to Argue Petitioner was a Minor Participant.**

The third issue raised by Petitioner in the instant motion is that sentencing counsel incorrectly argued that Petitioner was a minimal participant in the offense when counsel should have advocated that Petitioner was a minor participant in the overall underlying conduct. (*See* 162, 15-16). Petitioner is correct that Nahas argued at sentencing that Petitioner was a minimal participant in the offense. (*See* Sentencing Tr., 7:13-22, 12:12).

The commentary to § 3B1.2 to the guidelines defines both "minor participant" and "minimal participant." U.S. SENTENCING GUIDELINES MANUAL § 3B1.2 cmts. 4, 5. A "minimal participant" is an individual who is "plainly among the least culpable" of those involved in the offense conduct. *Id*. § 3B1.2 cmt. 4. The minimal role reduction is intended to apply to defendants with demonstrated "lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others." *Id*. By contrast, a "minor participant" is an individual whose conduct is "less culpable than most other participants . . ., but whose role could not be described as minimal." *Id*. § 3B1.2 cmt. 5. A defendant who is a "minimal participant" in criminal activity is entitled to a four-level reduction in his or her offense level, and a defendant who is a "minor participant" in the activity receives a two-level reduction. *Id*.

The Guideline's commentary emphasizes that inquiries under § 3B1.2 are "heavily dependent" on the facts of each case and require the court to examine the totality of the circumstances. *Id*. § 3B1.2 cmt. 3(C). The Sentencing Commission developed the factors test of Amendment 794 to guide this fact-intensive analysis of a defendant's relative culpability. *Id*. The factors, now part of Application Note 3(C) to § 3B1.2, are:

> (i) the degree to which the defendant understood the scope and structure of the criminal activity;
>
> (ii) the degree to which the defendant participated in planning or organizing the criminal activity;
>
> (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

(iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;

(v) the degree to which the defendant stood to benefit from the criminal activity.

*Id*.[2]

Petitioner is not entitled to relief based on his counsel's alleged error in arguing for a reduction based on minimal participation and not minor participation in the underlying offense. Although sentencing counsel characterized Petitioner as a "minimal participant", (*see* Sentencing Tr., 7:13-22, 12:12), it is clear from the sentencing record that Nahas sought a reduction for Petitioner as a "minor participant" given his request for only a two-level reduction rather than a four-level reduction. (*See id*.). Petitioner cannot demonstrate that sentencing counsel's performance was objectively unreasonable.

Petitioner is also unable to establish prejudice as a result of counsel's reference to minimal participation as opposed to minor participation. Petitioner was not eligible for a sentence reduction as a "minor participant." As explained by Petitioner at sentencing, his role in the importation of the methylone included researching the drug on the internet and finding the company that sold the drug. (*See* Sentencing Tr., 19:4-19). Petitioner explained that he ordered the drug on ten (10) occasions, and, while he did not distribute the methylone, he knew that the other individual involved in the importation was breaking down the drug and selling it. (*See id*. at 19:9-20:2). Petitioner was also recorded discussing the importation of methylone, during which Petitioner indicated that they needed to be careful about law enforcement, suggested a new method of concealing methylone in future shipments, and discussed the possibility of ordering a new package from China. (*See* PSR, ¶ 28). Petitioner was also recorded providing a full description of methylone, acknowledging that it was illegal, and advising that he had 125 grams of methylone stashed at his home. (*See id*.). On these facts, Petitioner was not a "minor participant" in the offense, and, therefore, any error by sentencing counsel in arguing for minimal participation instead of minor participation was not prejudicial to

---

[2] This commentary was added on November 1, 2015, *see United States v. Edmonds*, No. 12-232, 2016 WL 5253333, at *4 (W.D. Pa. Sept. 22, 2016), which was after Petitioner was sentenced.

Petitioner. *See*, *e.g.*, *United States v. Altwood*, No. 13-260, 2017 WL 3868692, at *3-4 (M.D. Pa. Sept. 5, 2017) (denying § 2255 petition where the petitioner was not entitled to mitigating reduction under § 3B1.2); *United States v. Thompson*, No. 11-77, 2016 WL 4528127, at *5 (M.D. Pa. Aug. 30, 2016) (same); *accord United States v. Berry*, 314 F. App'x 486, 489 (3d Cir. 2008) (counsel was not ineffective for failing to make a motion for downward adjustment under § 3B1.2 where the evidence clearly indicated that the petitioner was not a minor/minimal participant).

**D.      Failure to Properly Advise Petitioner on Merits of a Direct Appeal.**

Lastly, Petitioner argues that his sentencing counsel was ineffective because "he had no viable issue that could be raised on appeal since the court imposed a sentence below the applicable Guideline range." (*See* Doc. 162, 16-17). Petitioner claims he would have likely have prevailed on a direct appeal in two respects. (*See id.*). First, Petitioner argues that he would have prevailed as the result of the due process violation that occurred based on the alleged "erroneous starting point" in the calculation of Petitioner's guidelines range. (*Id.* at 17). Second, Petitioner claims that his appeal would have been successful because he was eligible for the acceptance of responsibility reduction. (*See id.*).

Petitioner is not entitled to relief based on his counsel's purportedly erroneous advice regarding the merits of a direct appeal. Petitioner does not contend that his sentencing counsel failed to file an appeal despite an explicit instruction to do so, (*see* Doc. 162, *generally*), nor does he claim that he was unable to consult with sentencing counsel regarding a potential appeal. (*See id.* at 16 ("Sepling was advised by counsel" regarding the merits of an appeal)). Rather, Petitioner's claim is that the advice regarding the likely success of an appeal was deficient. (*See id.* at 16-17). For reasons previously discussed herein, the claims that Petitioner asserts should have been raised on appeal did not present viable appellate issues. Additionally, "[w]here there is no evidence that the client requested an appeal, it cannot be said that counsel was ineffective for advising against an appeal when it would be meritless.'" *Dixon v. United States*, 151 F. Supp. 3d 582, 599 & n.9 (E.D. Pa. 2015) (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000)). Here, as sentencing counsel's advice that Petitioner's appeal would be unsuccessful did not fall below an objective standard of reasonableness, habeas relief on Petitioner's claim that counsel's advice

regarding the merits of an appeal is not warranted.

## IV. Conclusion

For the above stated reasons, Petitioner was not denied the effective assistance of counsel. As such, Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence will be denied. Further, in proceedings brought pursuant to 28 U.S.C. § 2255, an applicant cannot appeal to the circuit court unless a certificate of appealability has been issued. Under 28 U.S.C. § 2253(c)(2), a court may not issue a certificate of appealability unless "the applicant has made a substantial showing of the denial of a constitutional right." Restated, a certificate of appealability should not be issued unless "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000). As reasonable jurists would not disagree with the resolution of Petitioner's § 2255 petition, a certificate of appealability will not issue.

An appropriate order follows.

September 25, 2017  /s/ A. Richard Caputo
Date  A. Richard Caputo
  United States District Judge